786 So.2d 1055 (2001)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Pat CARR.
No. 2000-JP-01674-SCT.
Supreme Court of Mississippi.
June 14, 2001.
*1056 Luther T. Brantley, III, Irene Mikell Buckley, Attorneys for Appellant.
Paul S. Funderburk, Tupelo, Attorney for Appellee.
EN BANC.
DIAZ, Justice, for the Court:
¶ 1. On May 19, 2000, the Mississippi Commission on Judicial Performance (Commission) filed a formal complaint against Pat Carr, Justice Court Judge for the Northern District of Lee County, alleging judicial misconduct constituting a violation of Article 6, § 177A of the Mississippi Constitution of 1890, as amended. On June 5, 2000, the Commission filed an *1057 amended formal complaint which Carr answered on June 28, 2000. In lieu of an evidentiary hearing on the facts, Carr and the Commission submitted an Agreed Statement of Facts and Proposed Recommendation approved by counsel for the respective parties.
¶ 2. The Commission's Findings of Fact and Recommendation were filed with this Court on October 11, 2000. After an extensive investigation and review of the accusations, the Commission found that Carr's behavior constituted willful misconduct in violation of Canons 1, 2A, 2B, 3A(1) and 3A(7) of the Code of Judicial Conduct of Mississippi Judges.[1] As punishment for these transgressions, the Commission recommended that Carr be publicly reprimanded and pay costs associated with this matter amounting to $100.00. We concur with the joint resolution and adopt the findings of fact and agreed sanctions recommended to this Court by the Commission.

FACTS
¶ 3. The following recitation of facts outlines the offenses Carr committed as reported by the Commission. On or about August 21, 1998, Carr in his capacity as *1058 justice court judge, held an arraignment for two suspects each accused of committing murder, setting bail at five million dollars per suspect. Carr allowed the proceeding to be photographed and electronically recorded by representatives of the news media who thereafter broadcast the proceedings to the public.
¶ 4. On October 12, 1999, Carr held an initial appearance for a man charged with felony threatening phone calls, wherein he set bond at $50,000.00. Carr allowed the print and broadcast news media to photograph and electronically record the proceedings and disseminate them to the public. Later that day, Carr again allowed the press to record the initial appearance of a man charged with kidnapping who was held without bond. The news media later aired this recording to the public.

STANDARD OF REVIEW
¶ 5. The appropriate standard of review for a judicial disciplinary proceeding is derived from Rule 10(E) of the Rules of the Mississippi Commission on Judicial Performance, which instructs as follows:
Based upon a review of the entire record, the Supreme Court shall prepare and publish a written opinion and judgment directing such disciplinary action, if any, as it finds just and proper. The Supreme Court may accept, reject, or modify, in whole or in part, the findings and recommendation of the Commission. In the event that more than one recommendation for discipline of the judge is filed, the Supreme Court may render a single decision or impose a single sanction with respect to all recommendations.
Mississippi Comm'n on Judicial Performance v. Bishop, 761 So.2d 195, 197-98 (Miss.2000). In judicial misconduct proceedings, this Court is the trier of fact and alone possesses the power to impose sanctions. Mississippi Comm'n on Judicial Performance v. Neal, 774 So.2d 414, 416 (Miss.2000). Although this Court has an obligation to conduct an independent inquiry, we nonetheless give great weight to the findings of the Commission. Neal, 774 So.2d at 416.

DISCUSSION

I. WHETHER CARR'S CONDUCT CONSTITUTES WILLFUL MISCONDUCT IN OFFICE AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890.
¶ 6. Section 177A of the Mississippi Constitution of 1890 authorizes this Court to sanction judges for "willful misconduct in office or conduct which is prejudicial to the administration of justice which brings the judicial office into disrepute." We have defined "willful misconduct" as follows:
Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith.... Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into *1059 disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.
Mississippi Comm'n on Judicial Performance v. Russell, 691 So.2d 929, 937 (Miss. 1997). This Court can generally recognize examples of willful misconduct when they are presented for review. In re Anderson, 412 So.2d 743, 752 (Miss.1982) (Hawkins, J., specially concurring). The misconduct complained of need not be intentional or notorious; rather negligence, ignorance, and incompetence suffice as grounds for behavior to be classified as prejudicial to the administration of justice which brings the office into disrepute and thus worthy of sanctions. In re Quick, 553 So.2d 522, 527 (Miss.1989).
¶ 7. It is uncontested that Carr allowed arraignment and initial appearance proceedings to be photographed and videotaped by representatives of the news media who thereafter printed or broadcast said photographs and tapes to the public in clear violation of both the letter and spirit of the Code of Judicial Conduct, specifically Canon 3A(7). These actions typify the very demeanor we, members of the legal profession, seek to avoid. We agree with the Commission that Carr's behavior constitutes "willful misconduct in office or conduct which is prejudicial to the administration of justice which brings the judicial office into disrepute" as contemplated by our state constitution.

II. WHETHER CARR SHOULD BE PUBLICLY REPRIMANDED AND ASSESSED COSTS PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890.
¶ 8. Sanctions available to this Court in judicial misconduct cases include, but are not limited to, the power to remove a judge from office, suspend a judge from duty, levy a fine and require a public reprimand. Mississippi Comm'n on Judicial Performance v. Walker, 565 So.2d 1117, 1124 (Miss.1990). Of course, the sanction imposed should be commensurate with the offense committed. In re Bailey, 541 So.2d 1036, 1039 (Miss.1989).
¶ 9. The Commission has recommended that Carr receive a public reprimand and assessed costs in the amount of one hundred dollars as punishment for the misconduct. Carr agreed to this recommendation and, in fact, joined the Commission's motion asking this Court to accept the recommended sanctions. In determining whether a reprimand should be public, this Court will consider mitigating factors which weigh in favor of confidential, private action. Those factors are: (1) the length and character of the judge's public service; (2) any positive contributions made by the judge to the courts and the community; (3) the lack of prior judicial precedent on the incident in issue; (4) the commitment to fairness and innovative procedural form on the part of the judge; (5) the magnitude of the offense; (6) the number of persons affected; (7) whether "moral turpitude" was involved. Walker, 565 So.2d at 1125.
¶ 10. In light of Carr's previous private reprimand, we believe that proposed sanctions are consistent with prior case law and fit the offense. See Mississippi Comm'n of Judicial Performance v. Emmanuel, 688 So.2d 222 (Miss.1996) (judge publicly reprimanded and fined for allowing cameras in the courtroom). Based on the foregoing, we adopt the joint recommendation offered by Carr and the Commission. We therefore find, and so *1060 order, that Carr be publicly reprimanded and assessed with costs in the amount of $100.
¶ 11. PAT CARR, JUSTICE COURT JUDGE FOR THE NORTHERN DISTRICT OF LEE COUNTY, SHALL (1) BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE PRESIDING CIRCUIT JUDGE OF THE CIRCUIT COURT OF LEE COUNTY ON THE FIRST MONDAY OF THE NEXT TERM OF THAT COURT AFTER THIS DECISION IS FINAL AND (2) PAY THE COSTS OF THIS PROCEEDING IN THE AMOUNT OF $100.00.
PITTMAN, C.J., BANKS, P.J., SMITH, MILLS, WALLER and COBB, JJ., CONCUR. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J.
EASLEY, Justice, dissenting:
¶ 12. I respectfully dissent. The finding of Justice Court Judge Pat Carr's conduct to be willful misconduct is questionable. Judge Carr may have technically violated the Canons of the Code of Judicial Conduct for Mississippi Judges, but it does not appear to be a willful violation. Judge Carr erroneously relied on the advice of counsel. Justice Court Judges like all Judges are public servants, serving and protecting the people. Judge Carr's conduct may have been over zealous and wrong, but we would be hard pressed to state that it amounts to "willful misconduct."
¶ 13. In addition, even assuming a violation, the punishment imposed does not recognize the past service and contribution to the community by Judge Carr. Under the circumstances, a fine and a private reprimand would be adequate punishment. The fine assessed appears to be appropriate. However, any reprimand imposed on Judge Carr should be private. The point to Judge Carr that he erred will have been made.
¶ 14. For these reasons, I dissent as to the finding of a violation and the punishment.
McRAE, P.J., joins this opinion.
NOTES
[1] The relevant sections of the Code of Judicial Conduct are listed below:

Canon 1A Judge Should Uphold the Integrity and Independence of the Judiciary An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
Canon 2A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.
Canon 3A Judge Should Perform the Duties of His Office Impartially and Diligently
The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicative Responsibilities.
(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.
(7) A judge should prohibit broadcasting, televising, recording, or taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions, except that a judge may authorize:
(a) the use of electronic or photographic means for the presentation of evidence, for the perpetuation of a record, or for other purposes of judicial administration;
(b) the broadcasting, televising, recording, or photographing of investitive, ceremonial, or naturalization proceedings;
(c) the photographic or electronic recording and reproduction of appropriate court proceedings under the following conditions:
(i) the means of recording will not distract participants or impair the dignity of the proceedings;
(ii) the parties have consented, and the consent to being depicted or recorded has been obtained from each witness appearing in the recording and reproduction;
(iii) the reproduction will not be exhibited until after the proceeding has been concluded and all direct appeals have been exhausted; and
(iv) the reproduction will be exhibited only for instructional purposes in educational institutions.